FILED
2024 Oct-11  PM 03:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FILED
2024 OCT 11  P 2:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **Michael Moore,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No** 2:24cv 1394-SCC |
| | ) | |
| **Southern Company** | ) | |
| **Chris Womack** | ) | |
| **Alabama Power** | ) | |
| **Jeff Peoples** | ) | |
| **Georgia Power** | ) | |
| **Kim Greene** | ) | |
| **Mississippi Power** | ) | |
| **Anthony L. Wilson** | ) | |
| **Alabama Public Service Commission** | ) | |
| **Twinkle Andress Cavanaugh** | ) | |
| **Jeremy H. Oden** | ) | |
| **Chris Beeker** | ) | |
| **Steve Marshall** | ) | |
| **Kay Ivey** | ) | |
| **Defendants** | ) | |

## COMPLAINT

# FEDERAL RACKETEER INFLUENCED AND CORRUPT, RICO
# FEDERAL CIVIL RIGHTS VIOLATION

## PLAINTIFF DEMANDS TRIAL BY JURY

1. Michel Moore v. Southern Company, a RICO, RACKETEERING ENTERPRISE

Plaintiff Michael Moore brings this Complaint for fraud, civil conspiracy, civil rights violations, illegal debt collection, extortion and bribery as defined by Federal Racketeer Influenced and Corrupt Organizations Act  18 U.S.C. § 1964, RICO, Federal Civil Rights violation 42 U.S.C. § 1983 and various State Claims.

## **THE PARTIES**

Southern Company stock symbol, (*SO)*, and Chris Womack President, Chief Executive Officer, 30 Ivan Allen Jr. Blvd. NW, Atlanta, GA 30308.

Alabama Power stock symbol (*ALP-PQ)*, and Jeff Peoples Chairman, President and CEO, 600 18th Street North,  Birmingham, AL 3520

Georgia Power Company stock symbol (*GPJA*), and  Kim Greene Chairman, President and CEO, 241 Ralph Mcgill blvd Ne, bin #10180, Atlanta, GA, 30308-3374

Mississippi Power Company, (*MPPRD*), and Anthony L. Wilson Chairman, President and CEO, 2992 W Beach Blvd, Gulfport, MS, 39501-1805

State of Alabama, 600 Dexter Avenue, Montgomery, AL 36130

Alabama Public Service Commission, P.O. Box 304260, Montgomery AL 36130

Commissioner Twinkle Andress Cavanaugh, P.O. Box 304260, Montgomery AL 36130

Alabama Public Service Commission, Commissioner Jeremy H. Oden, , P.O. Box 304260, Montgomery AL 36130

Alabama Public Service Commission, Commissioner  Chris  Beeker, , P.O. Box 304260, Montgomery AL 36130

Alabama Attorney General, Steve Marshall, 501 Washington Avenue, Montgomery, AL 36104

Governor of Alabama, Kay Ivey, 600 Dexter Avenue, Montgomery, AL 36130

## JURISDICTION AND VENUE

This Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal RICO").

This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and there is complete diversity of citizenship between Plaintiff and the Defendants.

This Complaint seeks remedies pursuant to 42 U.S.C. §1983.

This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's claims, which are based on state law, under 28 U.S.C. § 1367.

Venue in the United States District Court for the Northern District of Alabama is proper pursuant to 28 U.S.C. § 1391.

This Court has jurisdiction over Plaintiff's related state and common law claims  pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

This Court has personal jurisdiction over Defendant, as the defendants are within this court's jurisdiction .

This Court further has personal jurisdiction over the State of Alabama, Alabama Public Service Commission, Governor of Alabama, Kay Ivey and Alabama Attorney General, Steve Marsha, Southern Company, Alabama Powers, Georgia Power and Mississippi Power under 28 U.S.C. § 1965(b) because in any action brought pursuant to the Federal RICO statute in a U.S. District Court, that Court may cause parties residing in another district to be summoned to that district if the "ends of justice require" it.

Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district. Venue is further proper in this District pursuant to 18 U.S.C. § 1965(a) because each defendant is found and/or transacts its affairs in this District given each defendant's participated in the **RACKETEERING ENTERPRISE.**

---

## STATEMENT OF THE CASE

1. This Case Is About, Extortion, Theft, Illegal Debt Collection, Constitution Rights Violation, Bribery, Wire And Mail Fraud by a RACKETEERING ENTERPRISE. Southern Company, stock symbol *(SO)*, and its subsidiaries are, major electric suppliers in the South Eastern America, operate as a criminal enterprise, a RACKETEERING ENTERPRISE. Southern Company, and its subsidiaries are monopolies and uses its monopoly power to illegal collect debts, extort funds, violate people's constitutional rights and uses funds derived from the **RACKETEERING ENTERPRISE** to influence and bribe state offices to provide political support and protection for the **RACKETEERING ENTERPRISE.**

---

## RACKETEERING ENTERPRISE
## EXTORTION TO THE PLAINTIFF

1. The plaintiff made a request for electric power service to Alabama Power on or about May 5, 2022. Over the next several days, through May 11, 2022, Alabama Power officials made 7

separate extortion demands for Michael Moore to surrender funds, pay alleged debts of other persons which he was not legal liable for, otherwise electric service would not be provided.

2. On May the 11, 2022 after the Plaintiff, stated that he would not pay any alleged debts of other persons, the officials at Alabama Power change the reason for not supplying electric service. Alabama Power now asserted and stated that electric was being denied because they had received an email demanding that service not be provided to the house and Michael Moore till it was completely rewired.

3. The person making this demand to Alabama Power had no authority to make such a demand. Now Alabama Power asserted that the denial of service was not base on the Plaintiffs refuse to submit to the extortion demands but was related to an email. Alabama Power could not produce the alleged email, and the document produced indicates the order to deny electric service was created 6 minutes before the alleged email was received. And the Decision to deny electric service was made before the first demand to Michael Moore, to pay alleged debts that Michael Moore did not legal owe and was not legally liable for.

4. Mr. Cotney an official of Alabama Power stated that the decision, demand to rewire the premises and for inspection was created May 5, 2022, and was based upon an email that was received by Alabama Power, demanding that Alabama Power not provide electric service to the House and Michael Moore. Mr. Cotney stated that anyone, for any reason, even for criminal or political purposes, could make a report and that Alabama Power, would electric would terminated, suspended or deny electric service. This Alabama Power policy, practice, procedure to deny, re3fuse service, appears to only be used when someone has refused to submit to illegal demands for fund, illegal debt collections and failed extortion attempts.

5. Mr. Cotney an official of Alabama Power, also stated that if the Plaintiff had the house rewired and inspected, and Alabama Power could or may received, another, more, additional, alleged, reports from anyone asserting any reason, all total unverified, and service would again, be terminated, suspended or denied. In effect stating, that until Michel Moore pay the $2000

extortion demand, no servicer would ever be established, because there would always be one more report..

6. Appellant filed a formal complaint with the Alabama Public Service Commission in September, This complaint asserted that Alabama had attempted to extort approximately $2000.00 for alleged debts of other persons before electric service would be provided and that was the basis for the service refusal.

7. Appellant filed a formal complaint with the Alabama Public Commission on September, This complaint asserted that Alabama had attempted to extort approximately $2000.00 for alleged debts of other persons before electric service would be provided and that was the basis for the service refusal.

8. During the matter before the Alabama Public Service Commission, an Alabama Power official, Mr. Cotney, filed an affidavit and stated that Alabama Power on a daily, regular basis, as a normal course of business practices, would withhold electric server and demand that those seeking electric servicer pay alleged debts of other people, that they were not legal liable for, before service would be provided.

9. Mr. Cotney stated in his affidavit that the demand, to rewire the premises and for inspection was created May 5, 2022,  6 minutes before the alleged email was received that it is based upon. The only explanation is, TIME TRAVEL, Alabama Power Could not produce this alleged email.

10. The Final Order of the Alabama Public Service Commission, of July 14, 2023, acknowledged, approved of and provided political support and protection for Alabama Power policies, practices and procedures of the extortion demands made to the Plaintiff for approximately of $2000.00, And confirmed Alabama Power had time travel capabilities.

11. The Final Order of the Alabama Public Service Commission, of July 14, 2023, acknowledged, approved of and provided political support and protection for Alabama Power

policies, practices and procedures, that electric service could be denied, refused, to force persons seeking electric service to pay others peoples alleged debts and that service could be denied based upon an allege email from anyone for any reason, even for criminal and politicalpurposes. Including an email that Alabama Power could not produced and that required that Alabama Power had time travel, and could deny service before any alleged report was made and received by Alabama Power.

12. The Final Order of the Alabama Public Service Commission, of July 14, 2023 also acknowledged, approved of and provided political support and protection for Alabama Power policies, practices and procedures, where Alabama Power could terminate, suspend service or deny server based upon any report from anyone, including false reports, reports made with malice, reports made for criminal purposes and intent, and even reports made for political purposes.

----

## **PATTERN OF FACKETEERING ACTIVITY**

13. In 2017, the Racketeering Enterprise using the monopoly power of Alabama Power refused electric service to Melisa Acheson Acheson surrender sums of money which she did not owe to Alabama Power.  Alabama Power, using its monopoly power, used extortion, thief and illegal debt collection practices, demanded, on 8 different occasions. Melisa Acheson was forced to surrender sums of money, to Alabama Power which she did not owe to Alabama Power, before service would be provided. Alabama Power demanded that Melisa Acheson pay alleged debts asserted by Georgia Power which was a debt that she was not legal liability for to Alabama Power and which Alabama Power could not collect through legal proceeding in the Courts. Alabama Power was acting as debt collector for Georgia Power.

14. In 2022, the Racketeering Enterprise using the monopoly power of Alabama Power refused electric service to Michael Moore and, using extortion, thief and illegal debt collection practices, demanded Michael Moore surrender sums of money which he did not owe to Alabama Power,

before service would be provided. Alabama Power demanded that Michael Moore pay alleged debt of another person which was a debt that he was not legal liability for and which Alabama Power could not collect through legal proceeding in the Courts.

16. In 2024, the Racketeering Enterprise using the monopoly power of Alabama Power refused electric service to Johnny Dillard and, using extortion, thief and illegal debt collection practices, demand, on 6 separated occasions, that Johnny Dillard surrender sums of money which he did not owe to Alabama Power, before service would be provided. Alabama Power demanded that Johnny Dillard pay alleged debt of another person, his deceased brother, which was a debt that he was not legally liability for and which Alabama Power could not collect through legal proceeding in the Courts.

17. In 2023, Mr. Cotney an official and /or employee of Alabama Power, also stated, on 14 separate occasions over a week in may of 2023, and in an affidavit filed with the Alabama Public Service Commission that Alabama Power used and uses it monopoly power to extort, theft and illegal debt collection practices to force individuals seeking service to surrender funds to Alabama Power before Electric Service Would be Provided. Mr. Cotney stated under oath, that Alabama Power in the normal course of business could and does extort, use theft and illegal debt collection methods and practices and other illegal methods to force people seeking eclectic server to surrender funds as demanded by Alabama Power. Which, Alabama Power could not collect through legal proceeding in the Courts.

18. In 2023, the Alabama Public Service Commission, acknowledged, approved of and provided political support and protection for Alabama Power's policies, practices and procedures, that Alabama Power used in the normal course of business, Alabama Power, could extort, use theft and illegal debt collection methods and practices and other illegal methods to force people seeking eclectic serves to surrender funds as demanded by Alabama Power. Which alleged debts, Alabama Power could not collect through legal proceeding in the Courts.

19. The **RACKETEERING ENTERPRISE,** Southern Company, Alabama Power, Georgia Power, and Mississippi Power, transfers the funds derived, by the **RACKETEERING**

**ACTIVES** the extort, theft and illegal debt collection methods and practices and other illegal methods in to bank accounts in several states and transfers these funds across state lines to launder the money by commingling these illegal funds with legal funds. The Money laundering is done in and as a normal course of business on a daily basis.

20. The **RACKETEERING ENTERPRISE,** Southern Company, Alabama Power, Georgia Power, and Mississippi Power, uses the funds that was moved and transferred for, to money launder the funds, and commingling the illegal funds with legal funds, and then transferring these funds, using bank account in various state and across state lines, to various organizations, groups and state officials, directly and indirectly to provide support and political protection for the **RACKETEERING ENTERPRISE.** The **RACKETEERING ENTERPRISE** is an ongoing Enterprise, engaging in the above described activates, hundreds of times each year and for the last 10 years.

21. The **RACKETEERING ENTERPRISE,** Southern Company, Alabama Power, Georgia Power and Mississippi Power as public traded business, create reports as the U.S. Securities and Exchange Commission rules and regulations requires, and as State and Federal Statues require. These reports created by the **RACKETEERING ENTERPRISE** hides and conceal the illegal funds derived from **RACKETEERING ACTIVITIES,** the extortion, theft and illegal debt collection methods and practices and other illegal crimes and methods, and list and display the illegal funds as legal earning. As such these reports are false and misleading and the information contained therein are false and misleading and a criminal act. The **RACKETEERING ENTERPRISE** creates and publishes these reports each year, many times each year and has for the last 10 years.

22. The **RACKETEERING ENTERPRISE,** Southern Company, Alabama Power, Georgia Power, and Mississippi Power, **RACKETEERING ACTIVITIES**, of extort, theft and illegal debt collection methods and practices and other illegal methods generate proceeds in excess of ***$100,000,000.00, one hundred million dollars each year***. The **RACKETEERING ENTERPRISE** does this in the normal course of business and has been doing this for over 10 years.

**23. The RACKETEERING ENTERPRISE,** Southern Company, Alabama Power, Georgia Power, and Mississippi Power collects debt for each other and other members of the **RACKETEERING ENTERPRISE, acting as debt collectors.** The **RACKETEERING ENTERPRISE,** collects these debts by refusing to provide electric service. These debt collect practices are a violation of 15 USC 1692f Unfair Practices. A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. These funds are then placed in, deposed in and used in the **RACKETEERING ENTERPRISE** banking accounts and systems and these funds are transferred across State lines, laundering the money. The **RACKETEERING ENTERPRISE** has been and does this many times each year have been doing this for the last 10 years.

---

## RACKETEERING ENTERPRISE

24. Southern Company, stock symbol (*SO*), in cooperation, with **its subsidiaries,** monopolies, Alabama Power, stock symbol (*ALP-PQ*), Georgia Power stock symbol, (*GPJA*)**,** and Mississippi Power, stock symbol (*MPPRD*), has created and operate a multi-state **RACKETEERING ENTERPRISE**. This **RACKETEERING ENTERPRISE** relies upon it monopoly power in Alabama, Georgia and Mississippi, and its ability to influence state officials to provide political support and protection for the **RACKETEERING ENTERPRISE**.

25. Chris Womack President and Chief Executive Officer of Southern Company, (*SO*), Jeff Peoples Chairman, President and CEO, Alabama Power (*ALP-PQ*), Kim Greene Chairman, President and CEO, Georgia Power Company (*GPJA*) and Anthony L. Wilson Chairman, President and CEO , Mississippi Power Company, (*MPPRD*) are the principal individuals that control and direct these Corporation, monopolies. As such their duties include directing these Corporations as to compliances with all State and Federal laws, rules and Regulations.

26.  Alabama Power (*ALP-PQ*), a Subsidiaries of Southern Company, (*SO*),   may and does, withhold, deny, refuse electric service, to persons, seeking electric service, and make demands, to those persons seeking electric service, to pay other persons alleged debts, that those persons seeking electric service are not legally liable for, before service will be  provided.

27.  George Power (*GPJA*), a Subsidiary of Southern Companies, (*SO*),   may and does, withhold, deny, refuse electric service, to persons, seeking electric service, and make demands, to those persons seeking electric service, to  pay other persons alleged debts, that persons seeking electric service are not legally liable for, before service will be  provided.

28. Mississippi Power Company (*MPPRD*), a Subsidiaries of Southern Companies, (*SO*),  may and does, withhold, deny, refuse electric service, to persons, seeking electric service, and make demands, to those persons seeking electric service, to pay other persons alleged debts, that persons seeking electric service are not legally liable for, before service will be  provided.

29. Alabama Power (*ALP-PQ*), a Subsidiaries of Southern Companies, (*SO*), may and does withhold, deny, refuse electric service, to persons seeking electric service, and act as debts collections service, for George Power (*GPJA*) and Mississippi Power Company (*PPRD*) and demands those seeking electric service from Alabama Power to pay alleged debts asserted by George Power (*GPJA*) and/or Mississippi Power Company (*MPPRD*) before receiving electric service. Those persons seeking service may or may not be legally liable for those asserted debts.

30. George Power (*GPJA*), a Subsidiaries of Southern Companies, (*SO*),  may and does withhold, deny, refuse electric service, to persons seeking electric service, and act as debts collections service, for Alabama Power (*ALP-PQ*) and Mississippi Power Company (*MPPRD*) and demands those seeking electric service to pay alleged debts asserted by Alabama Power (*ALP-PQ*) and/or Mississippi Power Company (*MPPRD*) before receiving electric service. Those persons seeking service may or may not be legally liable for those asserted debts.

31. Mississippi Power Company (*MPPRD*), a Subsidiaries of Southern Companies, (*SO*), may and does withhold, deny, refuse electric service, to persons seeking electric service, and act as debts collections service, for Alabama Power (*ALP-PQ*) and George Power (*GPJA*) and demands those seeking electric service to pay alleged debts asserted by Alabama Power (*ALP-*

*PQ)* and/or George Power (*GPJA*) before receiving electric service. Those persons seeking service may or may not be legally liable for those asserted debts.

32. Alabama Power, Georgia Power Company, and Mississippi Power Company, operates as monopolies by virtual of state statutes authoring these companies to offer electric service. There is no State or Federal Statues that allows Alabama Power, Georgia Power, and Mississippi Power to extort money for alleged debts in order to receive electric service. There is no State or Federal Statues that allows Alabama Power, Georgia Power, and Mississippi Power to withhold, or deny electric service to collect alleged debts asserted by other entities, companies or each other.

33. Alabama Power, Georgia Power, and Mississippi Power route those illegal funds derived from the **RACKETEERING ENTERPRISE,** using banks accounts and wire transfers, these funds are deposited into the general funds accounts, and commingle with lawful funds, thus tainting the general funds. Then, Alabama Power, Georgia Power, and Mississippi Power, use these tainted funds, in part, and in various manners and methods, including donations to various organizations , groups and directly and indirectly to politicians and political campaigns.

34. Portions of the funds at Alabama Power, Georgia Power, and Mississippi Power derived from the **RACKETEERING ENTERPRISE,** are routed to Southern Companies, using bank accounts and wire transfers. These funds are commingled with the general funds of Southern Company. These tainted funds are, in part, used for political purposes to advance the goal of the **RACKETEERING ENTERPRISE,** these tainted funds are used in various manners including, but not limited to, donations, directly and indirectly to government officials various organizations and groups that influence government policies and directly and indirectly and directly to politicians and political campaigns and government officials.

35. Southern Company, in cooperation with Subsidiaries, monopolies, Alabama Power, Georgia Power and Mississippi Power operates this multi-state **RACKETEERING ENTERPRISE.** Where Southern Company, with Subsidiaries Alabama Power, Georgia Power Company, Mississippi Power Company, the **RACKETEERING ENTERPRISE** extorts funds from those seeking electric service, engage in, illegal debt collections, extortion, theft, bribery, and conspiring with government offices to violate individuals constitutional rights. This criminal

**RACKETEERING ENTERPRISE** operates in several states and across state lines and it affects interstate commerce.

36. Southern Company, with Subsidiaries Alabama Power, Georgia Power Company, Mississippi Power Company, files reports and other documents with various Federal and State agencies. Specifically, but not limited to, reports with the Security and Exchange Commission and in these reports and documents Southern Company (*SO),* Alabama Power (*ALP-PQ),* Georgia Power Company (*GPJA*), Mississippi Power Company, (*MPPRD*) includes the funds derived from the **RACKETEERING ENTERPRISE**, in these reports and documents without disclosing that portions of the funds reported were derived from the **RACKETEERING ENTERPRISE** criminal activities

37. Alabama Power Employee, Mr. Cotney in an affidavit of October 31, 2022, filed with the Alabama Public Service Commission. And later filed with the Alabama Supreme Court verified and stated that Alabama Power has written official policies  and unofficial unwritten policies, of an ongoing and continuing activity, a pattern of activity, consisting of  extortion, theft, illegal debt collection, collecting unenforceable debt, and other crimes by the **RACKETEERING ENTERPRISE**.

38. Mr. Coteny, an Alabama Power official asserted, stated in effect, that Alabama Power has the authority to create rules, written and unwritten that supersede and nullify, any and all States and Federal Statues. Mr. Cotney stated under oath in his affidavit that Alabama Power has written and unwritten policies, practices and customs that it may requiring those seeking service to pay alleged debts, even though those seeking service, are not legal liable for those debts, before service would be provided. These written and unwritten policies, practices and customs are approved of and protected by State of Alabama officials and by the State of Alabama. Mr. Cotney stated to the plaintiff that this extortion occurs thousands of times each year by Alabama Power and that this is an ongoing and continuing activity.

---

## STATE OF ALABAMA AND THE RACKETEERING ENTERPRISE

39. State of Alabama, and by and through the Alabama Public Service Commission, its officials and employees provided political support and protection for the **RACKETEERING ENTERPRISE.** Officials and employees of the, Alabama Public Service Commission, stated to the plaintiff that Alabama Power can and does make any rule it wants, even rules that violated State and Federal laws, further stating, that the Alabama Public Service Commission would and does provide political support and protection for such rules.

40. The State of Alabama, the Alabama Public Service Commission, with Commissioners, Twinkle Cavanaugh, Jeremy H. Oden, and Chris Beeker, admitted and recognized that Alabama Power does refused to provide electric Service to people seeking electric service. acknowledged that Alabama Power does and may demand that those seeking electric service pay alleged debts, surrender funds to Alabama Power, for asserted alleged debts that they are not legal liable for, that these people do not legally owe to Alabama Power, before supplying electric service. Such debts, Alabama cannot collect in any Court.

41. Alabama Public Service Commission, an agency of the State of Alabama, with Commissioners Twinkle Cavanaugh, Jeremy Oden, and Chris Beeker uses, and used their power and authority, and the power and authority of their office and the State of Alabama and the power of the Alabama Public Service Commission, to provide political support and protection for Southern Company, Alabama Powers, Georgia Power and Mississippi Power, the **RACKETEERING ENTERPRISE**. Alabama Public Service Commission, an agency of the State of Alabama, and Commissioners Twinkle Cavanaugh, Jeremy Oden, and Chris Beeker, knows and are aware, that**,** those seeking electric service, that the **RACKETEERING ENTERPRISE** may and does, extorts fund, engages in theft, engage illegal debt collection, engage in collection of unenforceable debts, and use the monopoly power the state granted, violate people's constitutional right.

42. Alabama Public Service Commissioners .Twinkle Cavanaugh, Jeremy H. Oden, and Chris Beeker, conspiracy with Southern Company, Alabama Powers, Georgia Power and Mississippi Power, the **RACKETEERING ENTERPRISE.**

43. Alabama Public Service Commissioners, Twinkle Cavanaugh, Jeremy Oden, and Chris Beeker receive funds directly and/or indirectly from the **RACKETEERING ENTERPRISE.**

44. Alabama Public Service Commissioners .Twinkle Cavanaugh, Jeremy H. Oden, and Chris Beeker has a duty to act to protect the rights of the Citizens of the State of Alabama.

45. Governor of Alabama, Kay Ivey and Alabama Attorney General, Steve Marshall has knowledge of and was made aware, in writing, of Alabama Power, **RACKETEERING ENTERPRISE and** the **RACKETEERING ENTERPRISE**, uses extorting, theft, steals funds, , engage illegal debt collection, collection of unenforceable debts and violates peoples constitutional right, of those seeking electric service.

46. Attorney General, Steve Marshall provides political Support and protection for Southern Company, Alabama Powers, Georgia Power and Mississippi Power, to operate the **RACKETEERING ENTERPRISE,** to extort funds, theft, engage in illegal debt collections, collection of unenforceable debts and violate people's constitutional rights. Governor of Alabama, Kay Ivey and Alabama Attorney General, Steve Marshall receive funds directly and indirectly from the **RACKETEERING ENTERPRISE.**

47. The State of Alabama, Governor of Alabama, Kay Ivey and Alabama Attorney General, has a duty to act to protect the rights of the Citizens of the State of Alabama.

48. The State of Alabama, Governor of Alabama, Kay Ivey, Alabama Attorney General, Steve Marshall, Alabama Public Service Commissions, Commissioners Twinkle Cavanaugh, Jeremy Oden, and Chris Beeker conspires with Southern Company, and Alabama Power, Georgia Power and Mississippi Power to provide political support and protection to **RACKETEERING ENTERPRISE** to operates a multi-state the **RACKETEERING ENTERPRISE.**

49. The Governor of Alabama, Kay Ivey, Alabama Attorney General, Steve Marshall, Alabama Public Service Commissions, Commissioners Twinkle Cavanaugh, Jeremy H. Oden, and Chris Beeker use their offices and position as state officials to provide political support and protection for the **RACKETEERING ENTERPRISE.**

---

## FEDERAL AND STATE STATUES

### To include but not limited to the following.

15. Michel Moore v. Southern Company, a RICO, RACKETEERING ENTERPRISE

50. The Securities and Exchange Commission **(SEC)** requires publicly traded companies to submit various documents to ensure compliance and transparency. These documents include annual reports including but not limited to, Form 10-K, and quarterly reports on Form 10-Q, and reports on Form 8-K. Form 10-K is due 90 days after the end of the first fiscal year, and subsequent years have earlier filing deadlines. The annual report provides a comprehensive analysis of a company's financial condition, while the quarterly report provides a view of the company's ongoing financial condition throughout the year. The company's CEO and CFO must certify the financial and certain other information contained in these reports are accurate and true. Southern Company **(SO),** Alabama Power **(ALP-PQ)**, Georgia Power Company **(GPJA)**, Mississippi Power Company, **(MPPRD)** includes in these reports, of reported revenue, included funds derived from the **RACKETEERING ENTERPRISE,** without disclosing those portions of funds which were derived from the **RACKETEERING ENTERPRISE.**

52. 15 USC 1692f Unfair practices
A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

53. 18 U.S. U.S.C. § 1962 unenforceable and usurious debt
**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

54. 18 U.S.C. § 1956(a)(1) - a defendant must conduct or attempt to conduct a financial transaction, knowing that the property involved in the financial transaction represents the proceeds of some unlawful activity, with one of the four specific intents discussed below, and the property must in fact be derived from a specified unlawful activity.

54. 15 U.S.C. § 1692-1692, prohibits, collecting or attempting to Collect Debt, that individuals may not owe, or uses illegal methods to collect a debt, misrepresenting the nature of the debt, or threatening to do things that can't legally be done, or threatening to do things that the debt collector has no intention of doing.

55. 18 U.S. U.S.C. § 1961 - Definitions(1) "racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion.....

56. 18 U.S. U.S.C. § 1962 unenforceable and usurious debt (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

57. 18 U.S. U.S.C. § 1962(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

58. 18 U.S. Code § 1964 - Civil remedies (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

59. 18 U.S.C. § 1956(a)(1) - a defendant must conduct or attempt to conduct a financial transaction, knowing that the property involved in the financial transaction represents the proceeds of some unlawful activity, with one of the four specific intents discussed below, and the property must in fact be derived from a specified unlawful activity.

60. 15 U.S.C. § 1692, prohibits, collecting or attempting to Collect Debt, that individuals may not owe, or uses illegal methods to collect a debt, misrepresenting the nature of the debt, or

threatening to do things that can't legally be done, or threatening to do things that the debt collector has no intention of doing.

61. 18, U.S.C. § 241 - Conspiracy against Rights

This statute makes it unlawful for two or more persons to conspire to injure, oppress, threaten, or intimidate any person of any state, territory or district in the free exercise or enjoyment of any right or privilege secured to him/her by the Constitution or the laws of the United States...

62. 18 U.S.C. § 242 - Deprivation of Rights Under Color of Law

This statute makes it a crime for any person acting under color of law, statute, ordinance, regulation, or custom to willfully deprive or cause to be deprived from any person those rights, privileges, or immunities secured or protected by the Constitution and laws of the U.S.

63. 18 U.S.C. § 1951 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

64. 18 U.S. Code § 892 - Making extortionate extensions of credit

(a) Whoever makes any extortionate extension of credit, or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

65. 18 U.S. Code § 894 - Collection of extensions of credit by extortionate means

(a)Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

(1) to collect or attempt to collect any extension of credit, or

(2) to punish any person for the nonrepayment thereof,

shall be fined under this title or imprisoned not more than 20 years, or both.

66. 15 U.S.C. § 7241 - requires public companies to adopt internal procedures for ensuring accuracy of financial statements and makes the CEO and CFO directly responsible for the accuracy, documentation, and submission of the financial reports and internal control structure.

67. 42 U.S.C. § 1983 - Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution.

70. 13A-8-1 paragraph (14)k- do any other act which would not in itself substantially benefit the actor but which is calculated to harm substantially another person with respect to his or her health, safety, business, calling, career, financial condition, reputation, or personal relationships.

71. Section 13A-8-13 Extortion - Definition. A person commits the crime of extortion if he knowingly obtains by threat control over the property of another, with intent to deprive him of the property.

72. Criminal Code § 13A-8-14

(a) Extortion by means of a threat, as defined in paragraphs (14)a or (14)c of Section 13A-8-1, constitutes extortion in the first degree.

(b) Extortion in the first degree is a Class B felony.

73. Section 13A-4-2 Attempt.

(a) A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.

(b) It is no defense under this section that the offense charged to have been attempted was, under the attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the defendant believed them to be.

(c) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of this criminal intent, he avoided the commission of the offense attempted by abandoning his criminal effort and, if mere abandonment is insufficient to accomplish such avoidance, by taking further and affirmative steps which prevented the commission thereof. The burden of injecting this issue is on the defendant, but this does not shift the burden of proof.

(d) An attempt is a:

      (1) Class A felony if the offense attempted is murder.

      (2) Class B felony if the offense attempted is a Class A felony.

      (3) Class C felony if the offense attempted is a Class B felony.

      (4) Class A misdemeanor if the offense attempted is a Class C felony.

      (5) Class B misdemeanor if the offense attempted is a Class A misdemeanor.

      (6) Class C misdemeanor if the offense attempted is a Class B misdemeanor.

      (7) Violation if the offense attempted is a Class C misdemeanor.

74. Section 40-12-80 Collection agencies.

Each collection agency shall pay the following license tax: In towns and cities of 20,000 or more inhabitants, $100; in towns and cities of less than 20,000 inhabitants, $25. Each person who shall employ agents to solicit claims for collection from persons, firms, or corporations in the state shall be deemed a collection agency within the meaning of this section. This section shall not apply to any person who is excluded from the definition of the term "debt collector" under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692a(6).

75. The **RACKETEERING ENTERPRISE** consist of Defendant, Southern Company, Chris Womack, Alabama Power, Jeff Peoples, Georgia Power, Kim Green Mississippi Power, and Anthony L. Wilson.

76. The **State Actors** consist of Defendant, Alabama Public Service Commission, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, Kay Ivey.

---

## Federal RICO 18 U.S.C. § 1964

77 . Plaintiff incorporates by reference and re-alleges paragraphs 1 through 76 set forth above. Plaintiff alleges that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964. RICO defines "racketeering activity" as any crime enumerated in subdivisions A–G of subsection (1). The listed acts often are referred to as "predicate acts," because committing an enumerated crime is the foundation for a RICO offense."27 Subdivision A includes "any act or threat involving" certain state offenses, including murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in a controlled substance, and other serious crimes, punishable by imprisonment for more than one year.

78. 8 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee ...."

79. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

80. The **RACKETEERING ENTERPRISE** consists of a group of "persons" and "entities" associated together for the common purpose of intentionally and willfully conducting the

affairs of the **RACKETEERING ENTERPRISE**. The **RACKETEERING ENTERPRISE** is an ongoing organization that functions as a continuing unit. The **RACKETEERING ENTERPRISE** was created and used as and for a pattern **OF RACKETEERING ACTIVITY**.

---

# COUNT 1
## Violation of 18 U.S.C. § 1962

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above.

Each Defendant, Southern Company, Chris Womack, Alabama Power, Jeff Peoples, Georgia Power, Kim Green Mississippi Power, and Anthony L. Wilson at all relevant times, are and has been a "person" within the meaning of 18 U.S.C. § 1961(3) because each Defendant is capable of holding, and does hold, "a legal or beneficial interest in and did operate the **RACKETEERING ENTERPRISE,** Southern Company, Chris Womack, Alabama Power, Jeff Peoples, Georgia Power, Kim Green Mississippi Power, and Anthony L. Wilson**,** operate, participate in the operation of the **RACKETEERING ENTERPRISE** as described in paragraphs 13 through 23 as set forth above and;

Invested the proceeds of the pattern of racketeering activity into the enterprise; or

Acquired or maintained an interest in, or control of, the enterprise through the pattern of racketeering activity; or

Conducted or participated in the affairs of the enterprise "through" the pattern of racketeering activity ; or

Conspired to do one or more of the above.

Each Defendant, Southern Company, Chris Womack, Alabama Power, Jeff Peoples, Georgia Power, Kim Green Mississippi Power, and Anthony L. Wilson, at all relevant times, as to18 U.S. Code § 1962(d), did conspire, as, it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. Each Defendant had a meeting of minds with the other Defendants and with along with others conspired or agreed to participate in the **RACKETEERING ENTERPRISE**.

Defendants' activities include more than two acts of racketeering activity since 2017, as described in paragraphs 13 through 23 as set forth above, describing conduct which constitutes a "pattern" of activity, accordingly, Defendants' conduct constitutes a **"PATTERN OF RACKETEERING"** activity under 18 U.S.C. § 1961(5).

Each of the acts are crimes under the laws of the State of Alabama and/or Federal Statues. All Defendants agreed to and did conduct and participate in the conduct of the **RACKETEERING ENTERPRISE** affairs through a pattern of racketeering activity including, to engage in extortion, theft, illegal debt collections and other crimes to take money by illegally withholding, refusing electric service to people.

The **RACKETEERING ENTERPRISE** uses legal and illegal methods, the banks, the Federal Reserve System, wire transfers, the U.S. mail, telephone calls as well as wire fraud and mail fraud to operate the **RACKETEERING ENTERPRISE** and laundry the funds derived from the **"PATTERN OF RACKETEERING"**. The **RACKETEERING ENTERPRISE** cancels and hides the illegal funds derived from the **RACKETEERING ACTIVITES,** in reports to the public, stock holders, and State and Federal agencies.

As a result of the Defendants **RACKETEERING ENTERPRISE,** the Plaintiff was damaged in the amount of $25,000.00, twenty five thousand dollars.

**WHEREFORE,** Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE** for $75,000.00, seventy five thousand dollars in compensatory damages and $5,000.000.00 five million dollars in punitive damages to Michael Moore. And for such other

and further relief as the court may deem just and proper.

---

## COUNT 2

## Conspiracy

## Violation of 18 U.S.C. § 1962

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 and Court 1, as set forth above.

Each Defendant, Southern Company, Chris Womack, Alabama Power, Jeff Peoples, Georgia Power, Kim Green Mississippi Power, Anthony L. Wilsonat, at all relevant times, as to18 U.S. Code § 1962(d),  It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section. Each Defendant had a meeting of minds with the other Defendants, state actors, the State of Alabama, the Alabama Public Service Commission, while acting under color of state law, Twinkle,  Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, Kay Ivey and conspired with and/or agreed to participate in the **RACKETEERING ENTERPRISE** by provided political protection and support for the **RACKETEERING ENTERPRISE**  to engage in extortion, theft, illegal debt collections and other crimes to illegally take money from people by illegally threatening, withholding, refusing, electric service to people**.**

Defendants, state actors, The State of Alabama, Alabama Public Service Commission, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris  Beeker, Steve Marshall, Kay Ivey, acting in their administrative compactly and conspired with and/or agreed to participate in the **RACKETEERING ENTERPRISE**. These Defendants use their government positions and their offices to provide political support and protection for the **RACKETEERING ENTERPRISE.**

Defendants' activities include more than two acts of racketeering activity since 2017, as described in paragraphs 13 through 23 as set forth above, describing conduct which constitutes a "pattern" of activity, accordingly, Defendants' conduct constitutes a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

The above described acts are crimes under the laws of the State of Alabama and Federal Statues. All Defendants agreed to and  participate in the conduct of the **RACKETEERING ENTERPRISE** affairs through a pattern of **RACKETEERING ACTIVITY** including, extortion, thief, illegal debt collection, and other illegal methods and used banks and the Federal Reserve System, wire transfers, the U.S. mail, Telephone calls  as well as wire fraud and mail fraud.

As a result of the Defendants **RACKETEERING ENTERPRISE,** the Plaintiff was damaged in the amount of $25,000.00, twenty five thousand dollars.

**WHEREFORE**, Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE and** Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, Kay Ivey, for $75,000.00, seventy five thousand dollars in compensatory damages and $5,000.000.00 five million dollars in punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

---

## COUNT 3
## TITLE 42 – SECTION 1983
## RACKETEERING ENTERPRISE

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above.

That officials at the Alabama Public Service Commission stated that Alabama Power, could make any rule it wanted, including rules that violated state and federal law and that the Alabama Public Service Commission, acting through it officials would provide political support and protected for these rules, even rules that are criminal and illegal made by Alabama Power,

That officials at the Alabama Public Service Commission provide political support and protection to Alabama Power, the **RACKETEERING ENTERPRISE** to rig, fix any complaint, or proceeding where the **RACKETEERING ENTERPRISE was** engaged in. Including, proceeding where **RACKETEERING ACTIVITIES,** engaged in, extortion, theft, illegal debt collections and other crimes to take money from people by illegally threatening, withholding, refusing, electric service to people and violate those person seeking electric service constitutional rights.

That proceeding at Alabama Public Service Commission are so corrupted that Twinkle Andress Cavanaugh, Jeremy H. Oden and, Chris Beeker, **entered an order that found that Alabama Power had time travel and was able to travel in time**. This being part of the agreement to provided political protection and support for the **RACKETEERING ENTERPRISE** to engage in extortion, theft, illegal debt collections and other crimes to take money from people by illegally threatening, withholding, refusing, electric service to people**.**

Alabama Public Service Commission, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, while acting in their administrative compactly and under color of state law, conspired with the **RACKETEERING ENTERPRISE,** to corrupt proceeding when Alabama Power is a party and thus render the proceeding void of any and all constitutional protection and due process, making it nothing more than Star Chamber proceeding where the outcome was decided, " rigged" before the proceeding began and before the events occur that are the basis of the complaint and proceedings.

State offices while acting under color of law and in their administrative compactly, Steve Marshall, and Kay Ivey, knew and was away of the above and used their offices to provide political support and protection, and thus conspired with Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, and with the **RACKETEERING ENTERPRISE** rig proceeding**.**

Steve Marshall, Kay Ivey, winkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, all receive directly and indirectly funds derived from the illegal activities of the **RACKETEERING ENTERPRISE** by and through the **RACKETEERING ENTERPRISE** and organization and entities which the RACKETEERING ENTERPRISE provided fund to in various forms, fashions, mean and methods.

As a result of Steve Marshall, and Kay Ivey acting in their administrative compactly provide political support and protection to the **RACKETEERING ENTERPRISE** and to Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris Beeker which also provides political support and protection for the **RACKETEERING ENTERPRISE,** the constitutional right of the plaintiff were violated. Plaintiffs, 1,st, 4th, 5th, 6th and 14th Amendments rights were violated..

**WHEREFORE,** Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE** and The Alabama Public Service Commission, Steve Marshall, Kay Ivey, Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris Beeker for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

---

# COUNT 4
## TITLE 42 – SECTION 1983
## STATE ACTORS AND ACTION

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above.

Steve Marshall, Kay Ivey and Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris Beeker, while acting in their administrative capacity created, allowed to be created, approved of, both written and unwritten official and unofficial, policies, practices and procedures that allows the **RACKETEERING ENTERPRISE,** to use the monopoly power, granted by the State, to

engage in extortion, theft, illegal debt collections and other crimes to take money by illegally withholding, refusing electric service to people.

Steve Marshall, Kay Ivey, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, lack the authority and jurisdiction, to create any rule, police or practice, provision or exception to any statutory provision authorizing or allow and or approve of the **RACKETEERING ENTERPRISE** to engage in extortion, theft, illegal debt collections and other crimes to take money by illegally withholding, refusing electric service to people.

Steve Marshall, Kay Ivey, Twinkle, acting in their administrative compactly, and under color of law, provided support and protection to the **RACKETEERING ENTERPRISE** to engage in extortion, theft, illegal debt collections and other crimes to take money by illegally withholding, refusing electric service to people and to punish, retaliate, against people for not submitting to the illegal criminal demands of the **RACKETEERING ENTERPRISE.**

As a result of the State of Alabama, the Alabama Public Service Commission, Steve Marshall, Kay Ivey, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, all acting in their administrative capacity, and providing political support and protection for the **RACKETEERING ENTERPRISE** and conspiring with the **RACKETEERING ENTERPRISE,** to in engage in illegal conduct and criminal conduct and violate the plaintiffs constitutional rights 1st, 4th, 5th, 6th and 14th Amendments.

**WHEREFORE**, Plaintiffs demands judgment as follows against the Alabama Public Service Commission, Steve Marshall, Kay Ivey, Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris Beeker for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper. And, Plaintiffs also demands judgment as follows against the **RACKETEERING ENTERPRISE** for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

# COUNT 5
# PETITION FOR A RESTRAINING ORDER

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above and realleges Courts 1, 2, 3 and 4, as set forth above.

Specially Order the RACKETEERING ENTERPRISE, Southern Company, Alabama Power, George Power and Mississippi Power to Cease and Desist demand that one person pay someone else's alleged debt, all illegal extortions, thefts and illegal debt collections policies practices and customs and retaliations and Cease and Desist all illegal debt collections for any other parties or other entities alleged debts.

Specially Order , the State of Alabama, the Alabama Public Service Commission, the State officials Steve Marshall, Kay Ivey, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, to immediately  Cease and Desist providing all political support and protection for  the RACKETEERING ENTERPRISE illegal extortions, thefts, illegal debt collections policies, practices, customs and retaliations.

WHEREFORE, Plaintiffs demands a temporary and permanent RESTRAINING ORDER be issued to the RACKETEERING ENTERPRISE, Southern Company, Alabama Power, George Power and Mississippi Power and  to including the State of Alabama, the Alabama Public Service Commission, and State officials, State of Alabama, the Alabama Public Service Commission, the  State officials Steve Marshall, Kay Ivey, Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris  Beeker, to immediately Cease and Desist and immediately stop all illegal extortions, thefts, illegal debt collections policies, practices, customs and retaliations.

# COUNT  6

# WANTONNESS

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above.

The Plaintiff request electric service from Alabama Power, Alabama Power is a monopoly and has a duty by and under State Statues to provided eclectic server and was under a duty to provide electric service to the Plaintiff.

The **RACKETEERING ENTERPRISE** using the monopoly power of granted by the State of Alabama, attempted to extort approximately $2000.00 two thousand dollars from the plaintiff and when the plaintiff refuse to submit to the extortion demands, the **RACKETEERING ENTERPRISE** did, illegally, and with **WANTONNESS,** refuse to provide elected service to the plaintiff in retaliation for the Plaintiff to refusal to submit to the illegal extortion demands.

As a result of the **RACKETEERING ENTERPRISE** actions, the Plaintiff was damaged finically and otherwise.

**WHEREFORE,** Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE** for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

———————————————————————

## COUNT  7

## WANTONNESS

## Conspiracy for Wantonness

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 and Count 6 as set forth above.

The **State Actors** the Alabama Public Service Commission, and Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris  Beeker, Steve Marshall, and  Kay Ivey acting in their administrative pomposity, used their offices and positions to provide political support and protection and conspire with the **RACKETEERING ENTERPRISE,** to engage in criminal extortion and other criminal conduct with WANTONNESS.

As a result of the **RACKETEERING ENTERPRISE** actions**,** the Plaintiff was damaged finically and otherwise.

**WHEREFORE**, Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE and** Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris  Beeker, Steve Marshall, and Kay Ivey for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

---

## COUNT 8

## Breach of a Statutory Duty

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above.

The Plaintiff request electric service from Alabama Power, Alabama Power is a monopoly and authority by state statue and has a **Statutory Duty** to provided eclectic server and was under a **Statutory Duty** to provide electric service to the Plaintiff.

The **RACKETEERING ENTERPRISE, Alabama Power,** using the monopoly power of Alabama Power attempted to extort approximately $2000.00 two thousand dollars from the plaintiff and when the plaintiff refuse to submit to the extortion demands, did, breach a **Statutory Duty** to provide electric service, to the plaintiff in retaliation for the Plaintiff to refusal to submit to the illegal extortion demands..

As a result of the **RACKETEERING ENTERPRISE Alabama Power** , actions, the Plaintiff was damaged finically and otherwise.

**WHEREFORE**, Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE** for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

---

## COUNT 9

## Conspiracy
## Breach of a Statutory Duty

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 and COUNT 8 as set forth above.

The **State Actors**, Alabama Public Service Commission, and Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, Kay Ivey, acting in their administrative compactly, conspired with the **RACKETEERING ENTERPRISE, Alabama Power,** to breach Alabama Power **Statutory Duty** to provide eclectic server and in retaliation for the Plaintiff refusing to submit to the RACKETEERING ENTERPRISE extortion.

As a result of the **RACKETEERING ENTERPRISE, Alabama Power,** actions, the Plaintiff was damaged finically and otherwise.

**WHEREFORE,** Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE** and Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, and Kay Ivey for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

_____

## Count 10
## Tort of Outrage

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 as set forth above.

The **RACKETEERING ENTERPRISE** using the monopoly power of Alabama Power attempted to extort approximately $2000.00 two thousand dollars from the plaintiff and when the plaintiff refuse to submit to the extortion demands, did, intended to and did inflect emotional and physical distress upon Michael Moore and that the **RACKETEERING ENTERPRISE, Alabama Power,** actions and conduct was outrageous and extreme conduct and caused emotional and physical distress so severe that no reasonable person could be expected to endure and was done in retaliation for the Plaintiff to refusal to submit to the illegal extortion demands, of the **RACKETEERING ENTERPRISE.**

As a result of the **RACKETEERING ENTERPRISE, Alabama Power** actions, the Plaintiff was damaged finically and otherwise.

**WHEREFORE,** Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE** for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

---

## Count 11

## Conspiracy
## Tort of Outrage

Plaintiff incorporates by reference and realleges paragraphs 1 through 80 and Count 10 as set forth above.

The State officials Defendants Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, and Kay Ivey, acting in their administrative compactly conspired with the **RACKETEERING ENTERPRISE, Alabama Power,** to engage in conduct, which was outrageous and extreme conduct and caused emotional and physical distress so severe that no reasonable person could be expected to endure. The Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, and Kay Ivey, acting in their administrative compactly used their offices and political position and power as administrators to provide political support and protecting for the **RACKETEERING ENTERPRISE, Alabama Power,** to engage in such outrageous and extreme conduct.

As a result of the **RACKETEERING ENTERPRISE,. Alabama Power,** actions, the Plaintiff was damaged finically and otherwise.

**WHEREFORE,** Plaintiffs demands judgment as follows against the **RACKETEERING ENTERPRISE and** Twinkle Andress Cavanaugh, Jeremy H. Oden, Chris Beeker, Steve Marshall, and Kay Ivey for $25,000,000,000.00, twenty five million dollars in compensatory and punitive damages to Michael Moore. And for such other and further relief as the court may deem just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY

Defendant Michael Moore, Plaintiff, respectfully submits the above claims,

Plaintiff – pro se
Michael Moore
6113 Castle Heights
Morris Al 35116
205.852.0762
Znoes@Hotmail.com

Date  10/11/2024